Nos. 25-1698, 25-1755

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIRST CIRCUIT

―――――――――――

PLANNED PARENTHOOD FEDERATION OF AMERICA, INC.; PLANNED
PARENTHOOD LEAGUE OF MASSACHUSETTS; and PLANNED
PARENTHOOD ASSOCIATION OF UTAH,

*Plaintiffs-Appellees,*

v.

ROBERT F. KENNEDY, JR., in the official capacity as Secretary of the U.S.
Department of Health and Human Services; UNITED STATES DEPARTMENT OF
HEALTH AND HUMAN SERVICES; MEHMET OZ, in the official capacity as
Administrator of the Centers for Medicare & Medicaid Services; and CENTERS FOR
MEDICARE AND MEDICAID SERVICES,

*Defendants-Appellants.*

―――――――――――

On Appeal from the United States District Court
for the District of Massachusetts

―――――――――――

## MOTION FOR STAY PENDING APPEAL

―――――――――――

BRETT A. SHUMATE
  *Assistant Attorney General*
LEAH B. FOLEY
  *United States Attorney*
ERIC D. MCARTHUR
  *Deputy Assistant Attorney General*
DANIEL TENNY
STEVEN H. HAZEL
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7217*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 514-2498*
  *Steven.H.Hazel@usdoj.gov*

# TABLE OF CONTENTS

**<u>Page</u>**

INTRODUCTION ................................................................................................... 1

STATEMENT ......................................................................................................... 3

ARGUMENT .......................................................................................................... 7

    I.    The Government Is Overwhelmingly Likely to Prevail on the Merits ..... 7

        A.    Section 71113 Is Not a Bill of Attainder ......................................... 7

        B.    Plaintiffs' Other Claims Are Meritless ........................................... 13

    II.    The Equities Favor a Stay ......................................................................... 20

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Cases:** **Page(s)**

*Abbott v. Perez,*
  585 U.S. 579 (2018) ................................................................. 10

*ACORN v. United States,*
  618 F.3d 125 (2d Cir. 2010) ................................................ 8, 9

*Agency for Int'l Dev. v. Alliance for Open Soc'y Int'l, Inc.,*
  570 U.S. 205 (2013) ..................................................... 7, 18, 19

*Arcara v. Cloud Books, Inc.,*
  478 U.S. 697 (1986) ............................................................... 17

*Bowen v. Kendrick,*
  483 U.S. 1304 (1987) ................................................... 2, 20, 21

*Communist Party of the U.S. v. Subversive Activities Control Bd.,*
  367 U.S. 1 (1961) ...................................................... 10, 11, 12

*Cummings v. Missouri,*
  71 U.S. (4 Wall.) 277 (1866) ................................................... 9

*District 4 Lodge of the Int'l Ass'n of Machinists & Aerospace Workers Loc. Lodge 207 v.*
  *Raimondo,*
  18 F.4th 38 (1st Cir. 2021) .................................................... 20

*Dobbs v. Jackson Women's Health Org.,*
  597 U.S. 215 (2022) ........................................................... 11-12

*Elgin v. U.S. Dep't of the Treasury,*
  641 F.3d 6 (1st Cir. 2011) ....................................................... 7

*FCC v. League of Women Voters of Cal.,*
  468 U.S. 364 (1984) ......................................................... 15, 16

*Flemming v. Nestor,*
  363 U.S. 603 (1960) ............................................................. 8, 9

*González-Droz v. González-Colón,*
  660 F.3d 1 (1st Cir. 2011) ..................................................... 19

*Holder v. Humanitarian L. Project,*
  561 U.S. 1 (2010) ................................................................. 10

*Nixon v. Administrator of Gen. Servs.*,
    433 U.S. 425 (1977) ................................................................ 7, 8, 9, 10

*Nken v. Holder*,
    556 U.S. 418 (2009) ................................................................ 7,20

*NLRB v. SW Gen., Inc.*,
    580 U.S. 288 (2017) ................................................................ 10

*Regan v. Taxation With Representation of Washington*,
    461 U.S. 540 (1983) ................................................................ 16-17

*Rust v. Sullivan*,
    500 U.S. 173 (1991) ................................................................ 10

*Selective Serv. Sys. v. Minnesota Pub. Int. Rsch. Grp.*,
    468 U.S. 841 (1984) ................................................................ 7-8

*Trump v. Boyle*,
    No. 25A11, 2025 WL 2056889 (U.S. July 23, 2025) .................... 20

*Trump v. CASA, Inc.*,
    145 S. Ct. 2540 (2025) ............................................................ 21

*Turner Broad. Sys., Inc. v. FCC*,
    507 U.S 1301 (1993) ............................................................... 2

*Williams-Yulee v. Florida Bar.*,
    575 U.S. 433 (2015) ................................................................ 20

## Statutes:

Act of July 4, 2025,
    Pub. L No. 119-21, 139 Stat. 72 (2025) .......................................3-4, 7, 10, 11, 13, 15

12 U.S.C. § 1841(k) .................................................................... 15

16 U.S.C. § 620e(5) .................................................................... 15

26 U.S.C. § 414(b) ...................................................................... 15

29 U.S.C. § 1301(a)(14) ............................................................... 15

42 U.S.C. § 1304 ......................................................................... 3

42 U.S.C. § 1396 *et seq.* ............................................................... 3

42 U.S.C. § 1396a ....................................................................... 3

42 U.S.C. § 1396b ....................................................................... 3

42 U.S.C. § 1396b(i) ................................................................... 3

42 U.S.C. § 16452(b) ................................................................. 15

50 U.S.C. § 4611(b) ............................................................. 15, 16

**Legislative Material:**

171 Cong. Rec. E255 (daily ed. Mar. 27, 2025) ............................. 11

**Other Authority:**

*Affiliate*, Black's Law Dictionary (12th ed. 2024) ........................ 14

## INTRODUCTION

The district court's preliminary injunctions bar the government from enforcing an Act of Congress that established a new limit on Medicaid spending. All three democratically elected parts of the federal government concluded that the Medicaid program should no longer subsidize certain large abortion providers. The district court recognized that under Article I of the Constitution, Congress holds broad discretion to control federal spending. Yet the court entered two injunctions compelling the government to distribute taxpayer dollars to entities that are not statutorily entitled to receive them based on a federal policy against subsidizing abortion.

Rarely if ever has an Act of Congress been enjoined on such flimsy grounds. The district court deemed the Medicaid funding restriction a bill of attainder. But the Supreme Court has only invalidated laws under the Bill of Attainder Clause five times in its history—on each occasion in cases involving extraordinary laws punishing groups such as Confederates and Communist Party members. Halting federal subsidies bears no resemblance to the punishments—including death, banishment, and imprisonment—previously understood as implicating the Clause. And in any event, the funding restriction refrains from designating particular individuals for punishment and instead adopts a generally applicable definition of prohibited entities that focuses on future activity.

The district court's alternative First Amendment holding is no more plausible. The court appeared to recognize that the core statutory provisions, which apply without regard to any expressive activity, do not implicate the First Amendment. It nonetheless believed that the statutory definition encompassing an entity and its "affiliates" transforms the entire enactment into an intrusion on constitutionally protected association. But that provision prevents affiliates from obtaining Medicaid funds and then shifting those funds to the entities performing abortions, circumventing Congress's policy against subsidizing certain abortion providers. Congress often acts in this way to prevent regulated entities from using the corporate form to evade statutory requirements, and such provisions have never been understood as raising First Amendment concerns. In any event, any concerns regarding the statute's affiliate provision would not justify the court's injunctions, which sweep far beyond the small number of entities that may qualify as affiliates.

An immediate stay is warranted. The Supreme Court has recognized a strong presumption that "Acts of Congress . . . should remain in effect pending a final decision on the merits" by the Supreme Court. *Turner Broad. Sys., Inc. v. FCC*, 507 U.S 1301, 1301 (1993) (Rehnquist, C.J., in chambers). Indeed, in "virtually all" cases where a lower court has held a federal statute unconstitutional, the Supreme Court has "granted a stay if requested to do so by the Government." *Bowen v. Kendrick*, 483 U.S. 1304, 1304 (1987) (Rehnquist, C.J., in chambers). That is particularly appropriate here, where the elected Branches determined that taxpayer funds should not be used

to subsidize certain entities that practice abortion—conduct that many Americans find morally abhorrent.  By requiring that such subsidies continue, the district court's injunctions intrude on both Congress's Article I authority over federal spending and the Executive's Article II authority to enforce the law.

The government respectfully requests that the Court act on this stay request by 5PM on Monday, September 8, so that the government will have sufficient time to seek relief from the Supreme Court, if necessary, before prohibited entities are identified on October 1.  Plaintiffs oppose this motion.

## STATEMENT

**1.** The Medicaid program supplies federal funds to cover medical costs for certain low-income individuals.  *See* 42 U.S.C. § 1396 *et seq.*  Under that program, healthcare providers that care for eligible individuals seek reimbursement from the states, which receive funding from the Department of Health and Human Services.  *See id.* §§ 1396a, 1396b.  Since its inception, the Medicaid statute has included numerous restrictions on how federal dollars are spent.  *See, e.g., id.* § 1396b(i).  Congress reserved "[t]he right to alter, amend, or repeal" any aspect of the program.  *Id.* § 1304.

At issue here is a recent Act of Congress establishing a new limit on Medicaid spending.  Section 71113 of the 2025 Reconciliation Act generally forbids the use of Medicaid funds "to make payments to a prohibited entity."  Act of July 4, 2025, Pub. L. No. 119-21, § 71113, 139 Stat. 72, 300-01 (2025).  Section 71113 defines a

"prohibited entity" as an entity that, "as of [October 1, 2025]," provides elective abortions; "is an organization described in section 501(c)(3) of the Internal Revenue Code"; is an "essential community provider" primarily engaged in specified functions; and received over $800,000 in Medicaid funds in 2023. *Id.* at 300. A "prohibited entity" is "an entity, including its affiliates, subsidiaries, successors, and clinics," that meets these criteria. *Id.*

**2.** Plaintiffs are Planned Parenthood Federation of America, Inc. (PPFA), a membership organization, and two of its members, Planned Parenthood League of Massachusetts and Planned Parenthood Association of Utah. Dkt. No. 1, ¶¶ 19-41. As relevant here, plaintiffs assert that Section 71113 is facially unconstitutional on bill-of-attainder and Fifth Amendment equal-protection grounds, *id.* ¶¶ 130-153, and that Section 71113's inclusion of entities' "affiliates" impinges on First Amendment association and thereby violates the unconstitutional-conditions doctrine. *Id.* ¶¶ 164-168. Plaintiffs moved for a temporary restraining order (TRO) and a preliminary injunction. Dkt. No. 4.

On the same day plaintiffs filed their motion, the district court issued a TRO without providing any reasoning. Dkt. No. 18. The court later issued an amended TRO indicating that plaintiffs had shown a likelihood of success only as to their claims regarding Section 71113's application to affiliates, but nonetheless barring the government from enforcing the Section against any PPFA member. Dkt. No. 46, at 6-7.

Following a hearing, the district court first granted plaintiffs' preliminary-injunction motion in part and later granted it in full.  In its initial order, the court reasoned that Section 71113's reference to "affiliates" intrudes on the expressive association protected by the First Amendment.  Dkt. No. 62, at 18-28 (July 21 Order). Relying on that premise, the court concluded that plaintiffs had shown a likelihood of success on their unconstitutional-conditions and equal-protection claims.  *Id.*  The court did not reach plaintiffs' other claims.  It believed that the equities favor plaintiffs in large part because it viewed them as having demonstrated a "First Amendment injury."  *Id.* at 29.  Because the court's First Amendment theory was limited to the small number of PPFA members which may qualify as affiliates, it limited the injunction to those affiliates.  *Id.* at 35.

Shortly thereafter, however, the district court granted plaintiffs' preliminary-injunction motion in full.  *See* Dkt. No. 69 (July 28 Order).  The court reiterated its theory that Section 71113's reference to an entity's "affiliates" impinges on the First Amendment's protection of expressive association, and therefore contravenes unconstitutional-conditions and equal-protection principles.  *Id.* at 23-30.  This time, however, the court indicated that it now viewed the theory as supporting relief for "all" PPFA members, not just the small number that may be covered by the affiliate provision.  *Id.* at 3.  For the first time, the court also characterized Section 71113 as a bill of attainder.  It believed that withholding Medicaid funds from plaintiffs "is consistent with historical notions of punishment" such as "imprisonment,

banishment, and the punitive confiscation of property." *Id.* at 37. Turning to the equities, the court again relied chiefly on its view that Section 71113 "injures constitutional rights." *Id.* at 52. The court then entered a second injunction prohibiting the government from enforcing Section 71113 against any PPFA member. *Id.* at 58. The government appealed both injunctions.

Although the government had preemptively requested that the district court stay any injunction pending appeal, *see* Dkt. No. 53, the district court denied that request, *see* July 21 Order 33-35; July 28 Order 56-57. Out of an abundance of caution, on August 7 the government filed a separate stay motion in district court and noted its intention to seek relief from this Court if the district court did not grant a stay by August 11. Dkt. No. 85. After the district court directed plaintiffs to file their response by August 21, the government requested that this Court enter a stay. The Court denied the motion, emphasizing that the district court had indicated that it would "promptly" consider the motion pending before it. August 19 Order at 1. Yet as of this filing—three weeks after the government filed its standalone district-court stay motion and nearly a week after plaintiffs filed their response—the district court has not acted. The government will notify this Court if the district court rules on the stay motion.

# ARGUMENT

A stay pending appeal is plainly warranted. The government is likely to succeed on the merits and will face irreparable injury absent a stay, and the equities support a stay. *See Nken v. Holder*, 556 U.S. 418, 426 (2009).

## I. The Government Is Overwhelmingly Likely to Prevail on the Merits

### A. Section 71113 Is Not a Bill of Attainder

The Supreme Court has only applied the Bill of Attainder Clause to hold a statute unconstitutional on five occasions, all of which involved extraordinary laws concerning Confederates, Communist Party members, or "subversives." *See Elgin v. U.S. Dep't of the Treasury*, 641 F.3d 6, 19 (1st Cir. 2011) (Stahl, J., concurring) (collecting cases). The district court nonetheless believed that the Medicaid funding restriction at issue here qualifies as a bill of attainder. For a statute to implicate the Clause, it must (1) "inflict[] punishment" (2) "upon an identifiable individual." *Selective Serv. Sys. v. Minnesota Pub. Int. Rsch. Grp.*, 468 U.S. 841, 846-47 (1984). Neither requirement is satisfied.

**1.** Section 71113 advances Congress's "nonpunitive legislative purpose[]" of ending Medicaid funding for certain abortion providers. *Nixon v. Administrator of Gen. Servs.*, 433 U.S. 425, 475-76 (1977). Under Article I of the Constitution, Congress holds "broad discretion" to control federal spending by "impos[ing] limits on the use of such funds to ensure they are used in the manner Congress intends." *Agency for Int'l*

*Dev. v. Alliance for Open Soc'y Int'l, Inc.* (*AID*), 570 U.S. 205, 213 (2013). Congress exercised that discretion by establishing that Medicaid funds cannot be distributed to "prohibited entities," a term defined by reference to whether, as of October 1, 2025, an entity provides elective abortions, "is an organization described in section 501(c)(3) of the Internal Revenue Code," is an essential community provider primarily engaged in certain functions, and received over $800,000 in Medicaid funds in 2023. 139 Stat. at 300.

Halting the flow of Medicaid funds to these entities bears no resemblance to the forms of punishment that implicate the Bill of Attainder Clause. Historically, bills of attainder involved punishments such as "death," "banishment," and "imprisonment." *Selective Serv.*, 468 U.S. at 852. By contrast, the "withholding of appropriations" is not "a traditional form of punishment that is considered to be punitive per se." *ACORN v. United States*, 618 F.3d 125, 137 (2d Cir. 2010). The Second Circuit, for example, has rejected a bill-of-attainder challenge to appropriations laws withholding federal funds from ACORN, a non-profit corporation, and its affiliates. *See id.* at 131. The court explained that "[i]n comparison" to historical punishments, "a temporary disqualification from funds . . . may be more an inconvenience than [a] punishment." *Id.* at 137. Section 71113 is

8

even less like punishment than the law in *ACORN*, as the Section withholds appropriations based on future conduct, not past behavior.

In nonetheless concluding that Section 71113 imposes punishment, the district court equated it with historical laws "barring designated . . . groups from participation in specified employments." July 28 Order 37 (quoting *Nixon*, 433 U.S. at 474). But Section 71113 does nothing of the kind. Under the Section, "plaintiffs are not prohibited from any activities; they are only prohibited from receiving federal funds" if they continue performing abortions. *ACORN*, 618 F.3d at 137; *see Flemming v. Nestor*, 363 U.S. 603, 617 (1960) (holding that a statute was not punitive where "the sanction [wa]s the mere denial of a noncontractual governmental benefit").

That Section 71113 comes nowhere near imposing punishment under the Bill of Attainder Clause is illustrated by the Civil War-era case on which the district court relied. *See* July 28 Order 38 (citing *Cummings v. Missouri*, 71 U.S. (4 Wall.) 277 (1866)). In *Cummings*, the Supreme Court invalidated a state law that forced ex-Confederates to choose between forgoing their chosen professions or imprisonment. *See* 71 U.S. (4 Wall.) at 317. Section 71113, by contrast, simply requires prohibited entities to carry on without further federal subsidies (or to stop providing abortions and continue receiving federal funds). "Forbidden legislative punishment is not involved merely because [a statute] imposes burdensome consequences." *Nixon*, 433 U.S. at 472.

It was likewise error for the district court to declare that because longstanding federal law "already bars federal funding of elective abortion," Section 71113 "does

little to further its purported non-punitive ends." July 28 Order 39. "Money is fungible," and Congress was entitled to conclude that it does not want to contribute to abortion indirectly by allowing prohibited entities to allocate federal funds for other expenditures and use the savings to fund abortions. *Holder v. Humanitarian L. Project*, 561 U.S. 1, 31 (2010). Congress was similarly entitled to conclude that it did not wish to support entities engaged in a practice of which it disapproves. *See Rust v. Sullivan*, 500 U.S. 173, 192-93 (1991) ("[T]he government may 'make a value judgment favoring childbirth over abortion, and . . . implement that judgment by the allocation of public funds.'" (second alteration in original)).

Similarly unfounded is the district court's attempt to ascribe to Congress an "intent to punish." July 28 Order 40. "[O]nly the clearest proof could suffice to establish the unconstitutionality of a statute on [that] ground." *Flemming*, 363 U.S. at 617. Yet the court relied on "the least illuminating forms" of evidence. *NLRB v. SW Gen., Inc.*, 580 U.S. 288, 307 (2017). "[F]loor statements by individual legislators" are hardly a reliable guide to the intent of a 535-member body. *Id.* Likewise, bills introduced in 2017 and 2023, *see* July 28 Order 40, shed little light on a statute enacted years later, *cf. Abbott v. Perez*, 585 U.S. 579, 604-05 (2018) (declining to infer intent based on legislative acts two years previously). Regardless, the statements and bills the court cited are consistent with Congress's nonpunitive objective of preventing federal subsidies for certain abortion providers. *See, e.g., id.* ("[R]econciliation legislation offers an important opportunity to stop funding abortion purveyors like Planned

Parenthood." (quoting 171 Cong. Rec. E255 (daily ed. Mar. 27, 2025) (statement of Rep. Christopher H. Smith))).

**2.** Plaintiffs' bill-of-attainder claim fails for the independent reason that Section 71113 does not single out "identifiable individual[s]" for punishment. *Nixon*, 433 U.S. at 468. To satisfy this requirement, a statute must either refer to an individual "by name" or "describe[ them] in terms of conduct which, because it is past conduct, operates only as a designation of particular persons." *Communist Party of the U.S. v. Subversive Activities Control Bd.*, 367 U.S. 1, 86 (1961).

Section 71113 does not name plaintiffs and refrains from defining prohibited entities based on "past conduct." *Communist Party*, 367 U.S. at 87. "So long as the incidence of legislation is such that the persons who engage in the regulated conduct . . . can escape regulation merely by altering the course of their own present activities, there can be no complaint of an attainder." *Id.* at 88. That is the case here: because Section 71113 turns on whether an entity meets various requirements "as of" several months after the Section's enactment, 139 Stat. at 300, plaintiffs "can escape regulation" by altering their activities, *Communist Party*, 367 U.S. at 88. Most obviously, plaintiffs could cease to provide abortions (an activity in which they are not constitutionally entitled to engage, *see Dobbs v. Jackson Women's Health Org.*, 597 U.S.

215, 232 (2022)).  In addition, they could instead relinquish Section 501(c)(3) or essential-community-provider status.

The district court largely disregarded this aspect of Section 71113.  It instead emphasized that prohibited entities are defined in part by reference to a "retrospective characteristic[]"—whether an entity received "$800,000 in Medicaid reimbursements in 2023."  July 28 Order 34 (citing 139 Stat. at 300).  But no one could view this provision as reflecting an attempt to single out and punish entities that previously received a certain amount of Medicaid funding.  Rather, it eases the burden involved in a nonpunitive regulation of future conduct by exempting entities that previously obtained only relatively small amounts of Medicaid funding.  Such consideration of past conduct has never been understood as implicating the Clause's identification requirement.  In *Communist Party*, for example, "activity engaged in prior to the enactment of the legislation [could] be regarded administratively and judicially as relevant" in determining whether the challenged law applied to a given entity.  367 U.S. at 187.  That did not alter the Supreme Court's conclusion that the law permissibly "turn[ed] upon continuing contemporaneous fact" because its application "endure[d] only so long as[] an organization presently conducts

operations of a described character." *Id.* That statute was not a bill of attainder

for that reason, and neither is Section 71113.

That Section 71113 does not designate plaintiffs for punishment is especially

apparent given that it will likely encompass "at least two" entities unrelated to Planned

Parenthood. July 28 Order 14, 33 (quotation marks omitted). The district court

assigned no weight to this point largely because a 2017 bill that it viewed as a

precursor to Section 71113 expressly named Planned Parenthood. *Id.* at 33. But

Congress's rejection of that approach in favor of a generally applicable definition that

encompasses non-Planned Parenthood entities is, if anything, a reason to uphold

rather than invalidate the law.

At bottom, the district court appeared to believe that the identification

requirement is satisfied so long as Congress "expected" that Section 71113 would

apply to many (or all) Planned Parenthood members "if [they] continue[] to engage in

the[ir] present activities." *Communist Party*, 367 U.S. at 84. But it is not unusual for

Congress to legislate with a particular example in mind and to draw a statute's

boundaries in a way that will predictably include that example. Unless Congress takes

the additional step of defining a punitive enactment so that a particular entity is

"ineradicabl[y]" included, the Bill of Attainder Clause does not apply. *Id.* at 86-88.

## B. Plaintiffs' Other Claims Are Meritless

Plaintiffs' remaining claims rely on the flawed premise that the funding

restriction impinges on the First Amendment. The district court believed that Section

71113's anodyne reference to an entity's "affiliates" transforms the entire provision into an intrusion on expressive association. July 28 Order 3. But Section 71113's affiliate provision raises no First Amendment concern at all, much less a concern that would justify the court's entry of an expansive injunction covering all PPFA members.

**1.** The district court appeared to recognize that Section 71113's core provisions do not implicate the First Amendment. As discussed, those provisions halt Medicaid funding to prohibited entities, a term defined without regard to any form of expressive activity. Thus, the court properly did not suggest that Section 71113's ordinary operation raises any First Amendment concern.

Instead, the district court seized on Section 71113's definition of a "prohibited entity" to prevent prohibited entities from using the corporate form to evade the funding restriction. That definition specifies that a prohibited entity is "an entity, including its affiliates, subsidiaries, successors, and clinics." 139 Stat. at 300. Without this provision, a prohibited entity could create subsidiaries or affiliates and then use them to obtain Medicaid funds, frustrating Congress' objective of withholding taxpayer dollars from certain large abortion providers.

Section 71113's reference to affiliates thus has nothing to do with First Amendment association and instead ensures that the funding limitation cannot be defeated by corporate structure. In general, an affiliate is a "corporation that is related to another corporation by shareholdings or other means of control." *Affiliate*, Black's Law Dictionary (12th ed. 2024). Congress has adopted this definition in various

statutory provisions referring to an entity's affiliates. *See, e.g.*, 12 U.S.C. § 1841(k). This understanding of an affiliate fits well here, where Section 71113 refers not just to affiliates but also to "subsidiaries, successors, and clinics." Each of those entities is normally subject to the control of another company and could therefore be used to obtain Medicaid funds despite that company's provision of abortion.

Congress often includes similar provisions in federal statutes, and those provisions have never been regarded as raising First Amendment concerns. Some parts of the Internal Revenue Code and Employee Retirement Income Security Act regulate all corporations subject to the same "control." 26 U.S.C. § 414(b); *see* 29 U.S.C. § 1301(a)(14). Other provisions extending statutory requirements to regulated entities' affiliates pervade the United States Code. *See, e.g.*, 50 U.S.C. § 4611(b) (extending sanctions for export-control violations to any "affiliate, subsidiary, and successor" of the sanctioned entity); 16 U.S.C. § 620e(5) (extending conservation requirements to "any subsidiary, subcontractor, or parent company, and [certain] business affiliates" of covered entities); 42 U.S.C. § 16452(b) (extending record-keeping requirements for public-utility holding companies to "[e]ach affiliate" or "subsidiary" of those companies). The government is unaware of any decision casting doubt on the constitutionality of such provisions.

The district court's contrary approach misunderstands Supreme Court precedent and Section 71113 itself. At times, the court appeared to suggest that any statutory reference to affiliates amounts to an intrusion on expressive association. *See*

July 28 Order 26.  Under this theory, the numerous federal and state laws that refer to corporate subsidiaries and affiliates would be subject to stringent review under the First Amendment.  For example, the district court apparently believed that if PPFA triggered the export-control ban, *see* 50 U.S.C. § 4611(b), that longstanding provision of federal law could not be constitutionally applied to PPFA affiliates.  Indeed, the court's theory implies that even Section 71113's reference to an entity's "subsidiaries" would trigger heightened scrutiny. 139 Stat. at 300.  The First Amendment does not create a system in which Congress can withhold funds from specified entities but is powerless to prevent subsidies to those entities' affiliates and subsidiaries.

The Supreme Court cases that the district court cited highlight the absence of support for its approach.  *See* July 28 Order 28-29 (first citing *Regan v. Taxation With Representation of Washington*, 461 U.S. 540 (1983); and then citing *FCC v. League of Women Voters of Cal.*, 468 U.S. 364 (1984)).  Those cases involved laws requiring the recipients of federal funds to forgo expressive activities, including lobbying, *see Regan*, 461 U.S. at 542, and "editorializing," *FCC*, 468 U.S. at 366.  In both cases, the Supreme Court recognized that the resulting First Amendment concerns would be alleviated if the government allowed the regulated entities to lobby and editorialize through their affiliates.  *See Regan*, 461 U.S. at 543; *FCC*, 468 U.S. at 400-01.  That

16

principle has no bearing here, where Section 71113 does not require recipients of Medicaid funds to refrain from any expressive activity.

Other aspects of the district court's orders improperly conflate Section 71113's reference to an entity's affiliates with a regulation of "Planned Parenthood Federation['s]" "membership." July 28 Order 30. The court declared that "membership in [PPFA] is expressive" and emphasized that members collaborate to "advocate[] before Congress," "communicate[] with the public," and "support[ political] campaigns." *Id.* at 26-27. But none of that matters to Section 71113. If PPFA members wish to collaborate for the purpose of advocacy, praise or endorse each other publicly, or participate in events, doing so will not affect the application of Section 71113. Congress was instead concerned with the non-expressive activities of corporate control and financing of an enterprise that provides abortions. To the extent the district court believed that Section 71113 may incidentally burden plaintiffs because their organization's legal structure purportedly facilitates expressive activity, that sort of incidental burden does not implicate the First Amendment where, as here, the government regulates for reasons unrelated to expression. *See Arcara v. Cloud Books, Inc.*, 478 U.S. 697, 707 (1986).

The district court's discussion of PPFA's licensing policy was similarly beside the point. The court highlighted that "each Member licenses the use of the Planned Parenthood name, which expresses that each Member stands for particular values." July 28 Order 27. But the statute is not premised on that licensure, but rather on the

distinct concept of affiliation. To the extent that these concepts might overlap in this particular case, that does not transform the statute into a regulation of expression.

Even if the district court's First Amendment theory were correct, it would not support the relief the court entered. In its initial order, the court recognized that this theory would, at most, justify relief for the small number of Planned Parenthood members that are not prohibited entities in their own right but that may qualify as affiliates of entities that independently satisfy the statutory definition. *See* July 21 Order 35. In its second order, however, the court indicated that it now viewed the theory as supporting relief for "all Plaintiffs[]," July 28 Order 3, as well as all Planned Parenthood members. The court failed to explain why a First Amendment concern regarding the statute's application to a handful of unusual Planned Parenthood members would justify an injunction barring the statute's application to all group members.

**2.** Because plaintiffs' unconstitutional-conditions and equal-protection claims rely on the First Amendment theory refuted above, those claims fail. The district court's discussion of those claims also reflects other errors.

As to the unconstitutional-conditions claim, the district court acknowledged that Congress holds authority to "specify the activities [it] wants to subsidize" so long as it does not "seek to leverage funding to regulate speech outside the contours of the [funded] program itself." *AID*, 570 U.S. at 214-15; *see* July 28 Order at 27. The court believed, however, that defining a prohibited entity to encompass an entity and its

affiliates together is "unrelated to the scope" of the Medicaid program.  *Id.* at 28.  But Congress was not regulating the act of affiliation or the acts of the non-abortion-providing affiliates.  Rather, it was making funding decisions—which are indisputably within the challenged program—based on a complete understanding of how federal funds might directly or indirectly contribute to abortions given the fungibility of money.

As to the equal-protection claim, the district court suggested that, wholly apart from the burden on association, Section 71113 may not withstand rational-basis review.  That suggestion underscores the court's departure from established principles and conflicts with the decision of another district court in this circuit recognizing that Section 71113 readily withstands such review.  *See Maine Family Planning v. Kennedy*, No. 1:25-cv-364, 2025 WL 2439209, at *1 (D. Me. Aug. 25, 2025).  Under the "exceedingly deferential" rational-basis standard, *id.*, "legislation is presumed to be valid and will be sustained if the classification drawn . . . is rationally related to a legitimate state interest," *González-Droz v. González-Colón*, 660 F.3d 1, 9 (1st Cir. 2011) (citation omitted).  The district court here nonetheless doubted whether there is a "rational relationship" between Section 71113 "and the goal of reducing abortion."  July 28 Order 47.  But that Section reflects "a rational desire to withhold a Medicaid subsidy from the primary providers of [elective] abortions."  *Maine Family Planning*, 2025 WL 2439209, at *6.  And although the district court questioned why restricting funding only to essential community providers "is in any way related to reducing abortion," *see*

July 28 Order 48, those providers—which primarily serve low-income, medically underserved individuals—are most likely to have many Medicaid patients, therefore justifying the administrative burdens associated with identifying prohibited entities. In any event, given that the Supreme Court has rejected underinclusivity arguments "even under strict scrutiny," such arguments plainly have no purchase when rational-basis review applies. *Williams-Yulee v. Florida Bar.*, 575 U.S. 433, 449 (2015).

## II. The Equities Favor a Stay

The district court's orders threaten significant and irreparable harm to the government, *see Nken*, 556 U.S. at 435, which outweighs any claimed injury to plaintiffs.

There is a traditionally strong "presumption of constitutionality which attaches to every Act of Congress." *Bowen v. Kendrick*, 483 U.S. 1304, 1304 (1987) (Rehnquist, C.J., in chambers). "Any time a [government] is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." *District 4 Lodge of the Int'l Ass'n of Machinists & Aerospace Workers Loc. Lodge 207 v. Raimondo*, 18 F.4th 38, 47 (1st Cir. 2021) (second alteration in original). Thus, in "virtually all" cases where a lower court has held a federal statute unconstitutional, the Supreme Court has "granted a stay if requested . . . by the Government." *Bowen*, 483 U.S. at 1304 (Rehnquist, C.J., in chambers); *cf. Trump v. Boyle*, No. 25A11, 2025 WL 2056889 (U.S. July 23, 2025) (the Supreme Court's interim orders "inform how a court should exercise its equitable discretion in like cases"). That approach is

especially appropriate here, where the injunctions both interfere with Congress's power over federal spending, *see AID*, 570 U.S. at 213, and "improper[ly] intru[de]" on the Executive Branch's authority and ability to enforce the law, *Trump v. CASA, Inc.*, 145 S. Ct. 2540, 2561 (2025) (alterations in original) (quotation marks omitted).

The district court erred in downplaying these harms. Although the court acknowledged that "[t]here is a significant public interest in the implementation of duly enacted statutes," it depicted the government's injury here as "minimal." July 28 Order 53. The court reasoned that "Section 71113 was enacted as part of budget reconciliation legislation" yet "has a negligible impact on the federal budget." *Id.* But Congress adjusts federal spending for many reasons other than reducing the overall budget deficit. It did so here based on its determination that taxpayer dollars should not be allocated to certain organizations that perform elective abortions—conduct that many Americans find morally abhorrent and do not wish to subsidize. It was not the district court's role to second-guess Congress's judgment that halting the flow of taxpayer dollars to certain abortion providers serves the public interest.

On the other side of the ledger, the district court substantially overstated any harm to plaintiffs. The court's belief that the equities favor plaintiffs depended in significant part on the court's mistaken view of the merits. *See* July 28 Order 52-54. For the reasons given above, Section 71113 readily passes constitutional muster. *See Bowen*, 483 U.S. at 1304 (Rehnquist, C.J., in chambers) (the presumption of constitutionality "is not merely a factor to be considered in evaluating success on the

merits, but an equity to be considered in favor of [the government] in balancing hardships"). Plaintiffs have no cognizable interest in obtaining federal funds to which they are not legally entitled. And although the court suggested (July 28 Order 54) that the injunctions may prevent "disruption in patient care and corresponding adverse health outcomes," the court failed to explain why plaintiffs could not continue to provide services using other funding sources or why patients would not be able to obtain care from healthcare providers that are not prohibited entities under Section 71113.

## CONCLUSION

The Court should stay the injunctions pending appeal. The government respectfully requests that the Court act on this request by 5 PM on Monday, September 8 so that the government will have sufficient time to seek relief from the Supreme Court, if necessary, before prohibited entities are identified on October 1.

Respectfully submitted,

BRETT A. SHUMATE
  *Assistant Attorney General*
LEAH B. FOLEY
  *United States Attorney*

ERIC D. McARTHUR
  *Deputy Assistant Attorney General*

DANIEL TENNY

 */s/ Steven H. Hazel*
STEVEN H. HAZEL
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7217*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 514-2498*
  *Steven.H.Hazel@usdoj.gov*

August 2025

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing motion complies with the word limit of Federal Rule of Appellate Procedure 27(d)(2)(A) because the motion contains 5,198 words. The motion complies with the typeface and type-style requirements of Federal Rules of Appellate Procedure 27(d)(1)(E) and 32(a)(5)-(6) because it has been prepared using Microsoft Word 2016 in proportionally spaced 14-point Garamond typeface.

*/s/ Steven H. Hazel*
STEVEN H. HAZEL

**CERTIFICATE OF SERVICE**

I hereby certify that on August 28, 2025, I electronically filed the foregoing motion with the Clerk of the Court for the United States Court of Appeals for the First Circuit by using the appellate CM/ECF system.  Participants in the case are registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system.

*/s/ Steven H. Hazel*
STEVEN H. HAZEL