# UNITED STATES COURT OF APPEALS
# FOR THE FIRST CIRCUIT

PLANNED PARENTHOOD FEDERATION OF AMERICA, INC., ET AL.,

*Plaintiffs-Appellees*,

*v.*

ROBERT F. KENNEDY, JR., IN HIS OFFICIAL CAPACITY AS SECRETARY OF THE U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES, ET AL.,

*Defendants-Appellants*.

On Appeal from the United States District Court
for the District of Massachusetts in Case No. 1:25-cv-11913

## OPPOSITION TO MOTION FOR STAY PENDING APPEAL

Emily Nestler
PLANNED PARENTHOOD
 FEDERATION OF AMERICA, INC.
1110 Vermont Avenue, NW
Washington, D.C. 20005
Tel.: (202) 973-4800
emily.nestler@ppfa.org

Alan Schoenfeld
Cassandra A. Mitchell
Alex W. Miller
WILMER CUTLER PICKERING
 HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Tel.: (212) 937-7294
alan.schoenfeld@wilmerhale.com
cassie.mitchell@wilmerhale.com
alex.miller@wilmerhale.com

*Attorneys for Plaintiffs-Appellees*

September 3, 2025

ADDITIONAL COUNSEL ON INSIDE COVER

C. Peyton Humphreville
Kyla Eastling
PLANNED PARENTHOOD
 FEDERATION OF AMERICA, INC.
123 William Street
New York, NY 10038
Tel.: (212) 441-4363
peyton.humphreville@ppfa.org
kyla.eastling@ppfa.org

Albinas Prizgintas
WILMER CUTLER PICKERING
 HALE AND DORR LLP
2100 Pennsylvania Ave NW
Washington, DC 20037
Tel.: (202) 663-6700
albinas.prizgintas@wilmerhale.com

Sharon K. Hogue
WILMER CUTLER PICKERING
 HALE AND DORR LLP
60 State Street
Boston, MA 02109
Tel.: (617) 526-6000
sharon.hogue@wilmerhale.com

# TABLE OF CONTENTS

Page

INTRODUCTION ...................................................................................1

STATEMENT ......................................................................................3

    A.    Planned Parenthood's Mission And Message ........................3

    B.    The Defund Provision ...........................................................4

    C.    This Lawsuit ...........................................................................6

ARGUMENT .......................................................................................7

I.    THE GOVERNMENT IS UNLIKELY TO SUCCEED ON THE MERITS
OF ITS PRELIMINARY INJUNCTION APPEAL ........................................7

    A.    The Defund Provision Is An Unconstitutional Bill Of
Attainder ...............................................................................8

        1.    Specification ................................................................9

        2.    Punishment ...............................................................10

        3.    No Judicial Trial........................................................12

    B.    The Defund Provision Violates Equal Protection ................12

    C.    The Defund Provision Violates The First Amendment ......15

        1.    The Defund Provision violates Planned
Parenthood's First Amendment associational rights ...............15

        2.    The Defund Provision unconstitutionally retaliates
against Planned Parenthood's exercise of First
Amendment rights.....................................................18

II.    THE REMAINING FACTORS WEIGH HEAVILY AGAINST A STAY ......20

    A.    The Government Has Not Shown Irreparable Injury..........20

B.     A Stay Would Irreparably Harm Planned Parenthood ......................... 21

C.     A Stay Would Disserve The Public Interest ....................................... 22

CONCLUSION ........................................................................................................ 23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Agency for Int'l Dev. v. All. for Open Soc'y Int'l,*
    570 U.S. 205 (2013)......................................................................................16

*Alexander v. Choate,*
    469 U.S. 287 (1985).......................................................................................4

*Barton v. Clancy,*
    632 F.3d 9 (1st Cir. 2011)...................................................................18, 19, 20

*City of Cleburne v. Cleburne Living Ctr.,*
    473 U.S. 432 (1985)......................................................................................12

*Connection Distrib. Co. v. Reno,*
    154 F.3d 281 (6th Cir. 1998) ........................................................................20

*District 4 Lodge of the IAM v. Raimondo,*
    18 F.4th 38 (1st Cir. 2021)...........................................................................7, 8

*Eisenstadt v. Baird,*
    405 U.S. 438 (1972)......................................................................................13

*Florida Youth Conservation Corps v. Stutler,*
    2006 WL 1835967 (N.D. Fla. June 30, 2006) ..................................................11

*Gattineri v. Town of Lynnfield,*
    58 F.4th 512 (1st Cir. 2023)..........................................................................19

*Homans v. City of Albuquerque,*
    264 F.3d 1240 (10th Cir. 2001) .....................................................................20

*Joelner v. Vill. of Wash. Park,*
    378 F.3d 613 (7th Cir. 2004) .........................................................................20

*League of Women Voters of United States v. Newby,*
    838 F.3d 1 (D.C. Cir. 2016)...........................................................................22

*Legend Night Club v. Miller*,
637 F.3d 291, (4th Cir. 2011) ....................................................20

*Lozman v. City of Riviera Beach*,
585 U.S. 87 (2018) ...................................................................18

*Mahmoud v. Taylor*,
145 S.Ct. 2332 (2025).........................................................21, 22

*Maine Family Planning ("MFP") v. Kennedy*,
2025 WL 2439209 (D. Me. Aug. 25, 2025) .....................................14

*McCue v. Bradstreet*,
807 F.3d 334 (1st Cir. 2015)....................................................19

*NAACP v. Alabama*,
357 U.S. 449 (1958)................................................................17

*National Rifle Ass'n v. Vullo*,
602 U.S. 175 (2024)................................................................18

*New Jersey v. Trump*,
131 F.4th 27 (1st Cir. 2025)........................................................7

*New York v. Trump*,
133 F.4th 51 (1st Cir. 2025)...................................................7, 20

*Nixon v. Administrator of Gen. Servs.*,
433 U.S. 425 (1977)...........................................................10, 11

*Planned Parenthood of Cent. N.C. v. Cansler*,
877 F.Supp.2d 310 (M.D.N.C. 2012) ............................................11

*Reed v. Town of Gilbert*,
576 U.S. 155 (2015)................................................................17

*Rio Grande Cmty. Health Ctr., Inc. v. Rullan*,
397 F.3d 56 (1st Cir. 2005).......................................................23

*Roberts v. U.S. Jaycees*,
468 U.S. 609 (1984)..........................................................13, 19

*Rocket Learning, Inc. v. Rivera-Sanchez*,
715 F.3d 1 (1st Cir. 2013)...................................................................13

*Romer v. Evans*,
517 U.S. 620 (1996)............................................................................15

*Ross-Simons of Warwick, Inc. v. Baccarat, Inc.*,
217 F.3d 8 (1st Cir. 2000)..................................................................22

*Rust v. Sullivan*,
500 U.S. 173 (1991)............................................................................17

*SeaRiver Mar. Fin. Holdings, Inc. v. Mineta*,
309 F.3d 662 (9th Cir. 2002) .............................................................10

*Selective Serv. Sys. v. Minn. Pub. Int. Rsch. Grp.*,
468 U.S. 841 (1984)........................................................................9, 10

*Sindicato Puertorriqueño de Trabajadores v. Fortuño*,
699 F.3d 1 (1st Cir. 2012)................................................................7, 22

*Somerville Pub. Schs. v. McMahon*,
139 F.4th 63 (1st Cir. 2025).........................................................20, 23

*United States v. Brown*,
381 U.S. 437 (1965).........................................................................8, 10

*United States v. Lovett*,
328 U.S. 303 (1946)..............................................................................9

**Docketed Cases**

*Beckwith v. Frey*,
No. 25-1160, Dkt.00118270772 (1st Cir. Apr. 10, 2025) .................21

**Statutes**

42 U.S.C. §1396a ...................................................................................4

One Big Beautiful Bill Act,
Pub. L. No. 119-21, 139 Stat. 72 (July 4, 2025)............................4, 21

**Other Authorities**

Benner, *Most Planned Parenthood Clinics Are Ineligible for Medicaid Money After Court Ruling*, N.Y. Times (July 22, 2025) .......................................1

**INTRODUCTION**

The government seeks extraordinary relief to enforce an unconstitutional law concededly crafted to punish Planned Parenthood Federation of America ("PPFA") and its Members (together, "Planned Parenthood") for their political advocacy. Section 71113 of the "One Big Beautiful Bill"—the Defund Provision— categorically prohibits Planned Parenthood Members from receiving federal Medicaid reimbursements for providing health care services to their patients. This prohibition has nothing to do with funding abortions—the Hyde Amendment already bars that; the Defund Provision spares nearly every other abortion provider; and the law defunds Planned Parenthood Members that do not provide abortions. Instead, driven by animus toward Planned Parenthood based on its "political advocacy," the law seeks to prevent Planned Parenthood Members from providing vital—indeed, lifesaving—care to more than one million patients.[1] Because singling out Planned Parenthood for punishment in this manner violates the Constitution, the district court properly enjoined the Defund Provision.

Three constitutional commands independently support the preliminary relief entered below. First, the Constitution prohibits bills of attainder—laws, like this

---

[1] Benner, *Most Planned Parenthood Clinics Are Ineligible for Medicaid Money After Court Ruling*, N.Y. Times (July 22, 2025), https://www.nytimes.com/2025/07/22/ us/politics/trump-planned-parenthood.html (HHS spokesperson reacting to district court decision with "States should not be forced to fund organizations that have chosen *political advocacy* over patient care" (emphasis added)).

one, that specify and punish particular entities without a trial. Second, the Fifth Amendment's equal protection guarantee precludes the government from treating Planned Parenthood Members worse than other abortion providers without sufficient justification. Moreover, heightened scrutiny applies where, as here, the fundamental rights to association and political advocacy are impinged by that discriminatory treatment. Finally, the Constitution forbids punishing Planned Parenthood Members for exercising their First Amendment right to freely associate.

The government has now twice asked that this Court stay that injunction and prevent Planned Parenthood from continuing to provide lifesaving health care to the millions of Americans on Medicaid. As before, the government's request fails to meet any of the prerequisites for the catastrophic relief it seeks. Even temporary enforcement of the Defund Provision will cause irreparable harm, and the evidence of the law's unconstitutionality has only grown stronger since the district court's initial order. By contrast, the government cannot demonstrate irreparable harm from the injunction. It has no legitimate interest in perpetuating unlawful government action. And in the absence of a stay, the government is required only to continue reimbursing Planned Parenthood Members for health care services authorized and provided to patients under the Medicaid program—as it has for decades. This Court should deny the stay request.

**STATEMENT**

**A.    Planned Parenthood's Mission And Message**

PPFA is a national membership organization whose mission is to support the provision of comprehensive, high-quality sexual and reproductive health care regardless of ability to pay, educate the public about sexual and reproductive health, and advocate for access to sexual and reproductive health care.  Dkt.5-1 ¶¶7, 12. PPFA has 47 independently incorporated and operated Members including Plaintiff-Members Planned Parenthood League of Massachusetts ("PPLM") and Planned Parenthood Association of Utah ("PPAU").  Dkt.1 ("Compl.") ¶¶19, 25, 35.  PPFA and its Members have long been at the forefront of the reproductive rights movement.

Planned Parenthood Members' health centers provide sexual and reproductive health care to millions of people.  Dkt.5-1 ¶21.  An estimated one out of every three women and one in ten men nationally have received care from a Member health center.  *Id.*  In 2023, Members served more than two million patients and provided approximately 9.4 million services, including cancer examinations, contraceptives, testing and treatment for STIs, gender-affirming hormone therapy, and legal abortion.  *Id.* ¶23.  Especially in low-income communities, a Planned Parenthood Member health center is often the most accessible—if not the only—place to obtain sexual and reproductive health care.  *Id.* ¶¶24, 33.

## B. The Defund Provision

Medicaid is a joint federal-state program wherein the federal government provides financial assistance to States, through reimbursements, to help finance health care for eligible low-income individuals. *See Alexander v. Choate*, 469 U.S. 287, 289 n.1 (1985); 42 U.S.C. §1396a. Over half of Planned Parenthood Member patients rely on Medicaid, and half of visits to Member health centers are covered by Medicaid. Dkt.5-1 ¶¶5, 43.

The Defund Provision culminates a decades-long effort to punish Planned Parenthood for its advocacy, as statements by Speaker Johnson, President Trump, and their allies have made clear. Compl. ¶¶86-88, 91. The Defund Provision makes good on this promise by prohibiting federal Medicaid funds from going to a "prohibited entity"—a definition gerrymandered to capture Planned Parenthood Members—for "services furnished during the 1-year period beginning on the date of the enactment of this Act." Pub. L. No. 119-21, 139 Stat. 72, 300-01 (July 4, 2025). The legislative history makes clear that Congress described Planned Parenthood Members by their traits, rather than by name, to overcome a parliamentary rule known as the "Byrd Rule," *see* Dkt.5 at 10, 20 n.15, and the government has never disputed the point. Thus, the statute defines a "prohibited entity" as "an entity" "including its affiliates, subsidiaries, successors, and clinics," that:

> (1) "provides for abortions," other than abortions in the case of rape or incest or where the pregnant patient's life is in danger;

(2) is a 501(c)(3) nonprofit;

(3) "is an essential community provider described in" 45 C.F.R. §156.235 "primarily engaged in family planning services, reproductive health, and related medical care"; and

(4) "for which the total amount of Federal and State expenditures under the Medicaid program … in fiscal year 2023 made directly … to the entity or to any affiliates, subsidiaries, successors, or clinics of the entity, or made to the entity or to any affiliates, subsidiaries, successors, or clinics of the entity as part of a nationwide health care provider network, exceeded $800,000."

Nearly every entity that satisfies these criteria is a Planned Parenthood Member. Some Members, including PPLM, independently satisfy the law's requirements, and therefore independently qualify as "prohibited entit[ies]." *See* Dkt.5-1 ¶47; Dkt.5-2 ¶29. Others, including PPAU, either do not provide abortion services or did not receive over $800,000 in Medicaid funds during FY2023 and therefore do not independently meet this definition (the "Non-Qualifying Members"). *See* Dkt.5-3 ¶20; Dkt.5-1 ¶63. But to the extent the Non-Qualifying Members are deemed "affiliates" of the qualifying Planned Parenthood Members—a characterization the government has refused to dispel, Dkt.69 ("Op.") at 14—they likewise unable to receive Medicaid reimbursements under the Defund Provision. Virtually all other abortion providers are excluded, and the government has identified only two other providers that are captured as collateral damage. Mot.13.

If enforced, the Defund Provision will devastate Planned Parenthood Members, patients, and PPFA. It will force Members to terminate employees, curtail

services, and potentially close health centers, as over one-third of Members' total revenue is from Medicaid and some Members receive the majority of their health services revenue from Medicaid. Dkt.5-1 ¶¶44, 47, 54-55, 60-64. This will have lasting effects even if funding is restored, as it is often prohibitively difficult to reopen closed health centers. Dkt.5-4 ¶46. This in turn will jeopardize essential care for patients, many of whom lack alternative providers. Dkt.5-1 ¶¶4-5, 52-56.

### C. This Lawsuit

On July 7, Plaintiffs sued to enjoin the Defund Provision's enforcement. The same day, the district court entered a temporary restraining order, followed by an amended order on July 11, 2025. Dkt.46. On July 21, the court granted Plaintiffs' Motion for a Preliminary Injunction in part, Dkt.62, which the government appealed the next day, Dkt.63. On July 28, the district court granted the Preliminary Injunction in full. Op. The government appealed that order on August 5, Dkt.75, and on August 7, it filed a Motion to Stay Preliminary Injunctions Pending Appeal in the district court. Dkt.84. On August 11, the district court noted it had already denied the government's previous stay requests, directed Plaintiffs to respond to the pending stay motion, and said it would consider the motion "promptly" thereafter. Dkt.87.

That evening—despite the district court's order—the government moved for a stay in this Court. On August 19, this Court denied that motion without prejudice

to give the district court "a full opportunity to address the stay motion before it." Dkt.89. The government filed this stay motion on August 28, once again without waiting for the district court's decision. On August 29, the district court denied the stay motion pending before it. Dkt.93.

## ARGUMENT

A stay pending appeal is an "'intrusion into the ordinary processes of administration and judicial review.'" *New York v. Trump*, 133 F.4th 51, 65 (1st Cir. 2025). "[T]he party seeking a stay—here, the Government—bears the burden of proving that the circumstances justify one." *New Jersey v. Trump*, 131 F.4th 27, 34 (1st Cir. 2025). The government must "(1) make a 'strong showing that [it is] likely to succeed on the merits' in [its] appeal; (2) show that [it] 'will be irreparably injured absent a stay'; (3) show that 'issuance of the stay will [not] substantially injure the other parties interested in the proceeding'; and (4) show that the stay would serve 'the public interest.'" *New York*, 133 F.4th at 65 (alterations in original). "In the First Amendment context, the likelihood of success on the merits is the linchpin of the preliminary injunction analysis." *Sindicato Puertorriqueño de Trabajadores v. Fortuño*, 699 F.3d 1, 10 (1st Cir. 2012). Here, no factor favors a stay.

## I. THE GOVERNMENT IS UNLIKELY TO SUCCEED ON THE MERITS OF ITS PRELIMINARY INJUNCTION APPEAL

"Determining the likelihood of the [defendants'] success in this appeal requires [the court] to determine the likelihood that the district court itself erred in

issuing a preliminary injunction." *District 4 Lodge of the IAM v. Raimondo*, 18 F.4th 38, 42-43 (1st Cir. 2021). "To the extent the district court's ruling rested on findings of fact," this Court must "defer to those findings absent clear error." *Id.* at 43.

The district court correctly held that the Defund Provision is likely unconstitutional, both in granting preliminary relief and in denying the government's motion for a stay. Specifically, the court found that the law violates the Bill of Attainder Clause and the Fifth Amendment's equal protection guarantee as to all Members, and that it violates the First Amendment rights of the Non-Qualifying Members. The government fails to show that it is likely the district court erred on any of those claims, let alone all three. Further, a stay is improper because the Defund Provision constitutes unlawful retaliation against all Members' protected speech and association.

## A.      The Defund Provision Is An Unconstitutional Bill Of Attainder

The Defund Provision punishes Planned Parenthood for being the Nation's foremost advocate for sexual and reproductive rights, using a gerrymandered set of criteria that were specifically designed to capture the providers in Planned Parenthood's visible and unique membership association. The Bill of Attainder Clause prohibits "trial by legislature" and requires legislatures to accomplish their objectives "by rules of general applicability," not by "specify[ing] [those] upon whom the sanction it prescribes is to be levied." *United States v. Brown*, 381 U.S.

437, 442, 461 (1965). The district court correctly held that the Defund Provision likely satisfies all three elements of a bill of attainder: "[1] specification of the affected persons, [2] punishment, and [3] lack of a judicial trial." *Selective Serv. Sys. v. Minn. Pub. Int. Rsch. Grp.*, 468 U.S. 841, 847 (1984).

### 1. Specification

Specification exists if the challenged legislation applies "to easily ascertainable members of a group." *United States v. Lovett*, 328 U.S. 303, 315 (1946). The Defund Provision "singles out Planned Parenthood Members by defining the class subject to the regulation based on immutable facts." Dkt.93 at 18-19. The definition of "prohibited entity" in the Defund Provision was designed for Planned Parenthood alone—deploying, per the district court, a set of "conjunctive criteria [that] create a narrow class of entities consisting almost entirely of Planned Parenthood Members." Op.32. The legislative history and context confirm that intent. *Supra* pp.4-5.

None of the Defund Provision's peculiarities change this. It is immaterial that the law incidentally captures two entities other than Planned Parenthood Members. The government has never disputed that these entities were afterthoughts swept into the bill during reconciliation. Dkt.5 at 10, 20 n.15. Nor does it matter that the specified class may escape punishment by ceasing to provide abortions and disaffiliating with abortion-providing entities. Mot.11-13. Leaving "the designated

parties a way of escaping the penalty" does not excuse a bill of attainder. *Brown*,
381 U.S. at 442. As the district court explained, the "law establishes a class of
entities and requires only those entities to stop providing abortion—and to
disaffiliate with entities that do—to continue receiving Medicaid reimbursements."
Op.34. Because the Defund Provision specifies Planned Parenthood in all but name,
the specification element is satisfied. *See SeaRiver Mar. Fin. Holdings, Inc. v.
Mineta*, 309 F.3d 662, 669-670 (9th Cir. 2002) ("A statute need not identify an
individual or group by name to incur suspicion.").

### 2. Punishment

Three factors determine whether legislation punishes: "(1) whether the
challenged statute falls within the historical meaning of legislative punishment; (2)
whether the statute, 'viewed in terms of the type and severity of burdens imposed,
reasonably can be said to further nonpunitive legislative purposes'; and (3) whether
the legislative record 'evinces a congressional intent to punish.'" *Selective Serv.
Sys.*, 468 U.S. at 852. The district court rightly held that those factors show the
Defund Provision imposes punishment. Op.36-41; Dkt.93 at 15-16.

*First*, "'barring designated…groups from participation in specified
employments or vocations' is a historical form of punishment characteristic of bills
of attainder." Op.37 (quoting *Nixon v. Administrator of Gen. Servs.*, 433 U.S. 425,
474 (1977)). The Defund Provision prevents Planned Parenthood Members from

continuing to serve Medicaid patients, "put[ting] plaintiff[s] out of business, or at least…out of the business in which [they have] been engaged to date." *Florida Youth Conservation Corps v. Stutler*, 2006 WL 1835967, at *1 (N.D. Fla. June 30, 2006). Exclusion is therefore "analogous to legislation that prohibits a person or entity from engaging in certain employment, which courts have historically found to be associated with punishment." *Planned Parenthood of Cent. N.C. v. Cansler*, 877 F.Supp.2d 310, 324 (M.D.N.C. 2012).

*Second*, the Defund Provision does not advance any nonpunitive legislative purpose. *Nixon*, 433 U.S. at 475-476. The government's sole *post hoc* justification—not subsidizing abortion providers, *see* Mot.9-10—is nonsensical. The Defund Provision does not prevent federal funding for abortions,[2] nor does it prevent the majority of abortion providers from receiving Medicaid funding. Dkt.93 at 16. The Defund Provision thus has nothing to do with funding abortion, but instead aims to punish Planned Parenthood for its "political advocacy." Benner, *supra* n.1.

*Third*, the legislative record confirms the government's intent to punish Planned Parenthood. The statute's supporters have reaffirmed that their point was to target and punish Planned Parenthood. *Supra* pp.4-5. Further, the Defund

---

[2] The Hyde Amendment has long prohibited Medicaid funding for most abortions.

Provision's "inclusion of only 'certain abortion providers' supports the conclusion that Congress acted with an intent to punish." Dkt.93 at 17.

### 3. No Judicial Trial

The Defund Provision undisputedly operates without a trial.

### B. The Defund Provision Violates Equal Protection

Equal protection directs "that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). By design, the Defund Provision prohibits Planned Parenthood Members from receiving Medicaid reimbursements while leaving untouched almost all others who provide the same care—even abortions. For instance, for-profit abortion providers may still participate in Medicaid. So too may non-profit abortion providers who do not predominantly serve low-income individuals or engage primarily in family planning services. As the district court held, this selective disfavoring fails heightened scrutiny, but it would also fail any level of review.

Heightened scrutiny applies because the Defund Provision infringes Planned Parenthood's fundamental First Amendment right of association. Because the Defund Provision "applies to affiliates of an entity that provide[s] abortion, no Member can escape the law's burden simply by ending its own abortion services. Instead, a Member must also disaffiliate from any Member that continues to provide abortion, which requires disassociating from [PPFA]." Op.45. That compulsion

curtails Members' associational expression, as "[m]embership in [PPFA]—and corresponding affiliation with other Members—is…part and parcel with Planned Parenthood Members' associational expression." Op.27.  As the district court found, "[PPFA] advocates before Congress, provides education and information about sexual and reproductive health,…communicates with the public regarding lawmakers' voting records, supports campaigns for ballot initiatives, and supports candidates for federal, state, and local officials who will support reproductive freedom in furtherance of its mission." Op.26-27.  And "Members engage in those activities with [PPFA] and each other," rendering their association highly expressive.  Op.27.  Coercing Members to abandon these expressive associations is a quintessential burden on core First Amendment activity.  *Roberts v. U.S. Jaycees*, 468 U.S. 609, 618, 622 (1984).

"Classifications that impinge on 'fundamental rights,'" including First Amendment rights, "are subject to strict scrutiny and will only be upheld if 'precisely tailored to serve a compelling governmental interest.'"  *Rocket Learning, Inc. v. Rivera-Sanchez*, 715 F.3d 1, 9 n.6 (1st Cir. 2013); *Eisenstadt v. Baird*, 405 U.S. 438, 447 n.7 (1972).  The government does not dispute this established standard and does not dispute that, if heighted scrutiny applies, the Defund Provision fails.  As the

district court correctly concluded, the Defund Provision comes nowhere near this and fails even rational basis review. Op.43-49; Dkt.93 at 9-11.[3]

The statute does not serve the government's sole asserted purpose: "a federal policy against subsidizing abortion." Mot.1. As explained, federal law already prohibits funding most abortions. *Supra* n.2. But even if it did not, the Defund Provision punishes *non*-abortion providers if they merely "affiliate" with a "prohibited entity," despite the lack of any evident link between such affiliation and "subsidizing abortion." The statute deploys several conditions that, again, have nothing to do with abortion. As the district court observed, "it is unclear how including only entities that are non-profits and provide medical services in underserved communities is in any way related to reducing abortion." Op.48. Even if the government could connect the provision's requirements to its asserted interest in disfavoring abortion—which it cannot—the combined conditions single out only Planned Parenthood Members and two collateral casualties, leaving all other abortion providers untouched. The Defund Provision thus does not halt Medicaid

---

[3] The government makes passing reference to *Maine Family Planning ("MFP") v. Kennedy*, 2025 WL 2439209 (D. Me. Aug. 25, 2025), a separate lawsuit brought by one of the two non-Planned Parenthood providers swept up by the Defund Provision as collateral damage, which consists of a single Equal Protection claim that does not implicate the First Amendment and thus is based on rational basis review. Although the District of Maine denied MFP's motion for a preliminary injunction, it expressly recognized that Planned Parenthood's case "raises distinct legal questions and a less deferential standard of review" than MFP's. *Id.* at *2 n.4.

funds for one category of abortion providers, Mot.19, but rather deploys layered criteria that are designed to target one provider network for unequal treatment: Planned Parenthood. Op.47; Dkt.93 at 9.

Pretexts aside, the provision's true design is to punish Planned Parenthood for its advocacy for abortion rights and access. Underscoring what was already clear from the Defund Provision's layered scheme and history, the government has reiterated that it should be able to defund what it deems to be "organizations that have chosen political advocacy over patient care." Benner, *supra* n.1. Such a "'bare…desire to harm'" Planned Parenthood is not a legitimate, much less compelling, government interest. *Romer v. Evans*, 517 U.S. 620, 632-635 (1996); Op.48 ("[D]iscriminatory exclusion…is [not] a permissible legislative end.").

## C. The Defund Provision Violates The First Amendment

### 1. The Defund Provision violates Planned Parenthood's First Amendment associational rights

As the district court held, the Defund Provision violates Planned Parenthood's First Amendment rights by imposing an unconstitutional condition that coerces Members to stop associating with PPFA and other Members. The district court's analysis focused on Members that do not provide abortions, who can avoid the Defund Provision only by forgoing their "right to associate with [PPFA] and other Members" that do. Op.26. This reasoning is correct, and it also supports the injunction as to all Planned Parenthood Members and PPFA—none of whom, the

government asserted, can escape harm without "ceasing to provide for abortions *and disaffiliating with entities that do*." Dkt.53 at 11 (emphasis added); *see also* PI.Hearing.Tr.30:9-14 ("an entity can't get out from this prohibition by stopping abortions if it remains affiliated with [PPFA] or other Planned Parenthood members").

The unconstitutional conditions doctrine protects against such coercion. The doctrine bars the government from "'leverag[ing] funding to regulate speech outside the contours of the [funded] program itself,'" while permitting the government to "specify the activities Congress wants to subsidize." Op.25 (second alteration in original) (quoting *Agency for Int'l Dev. v. All. for Open Soc'y Int'l*, 570 U.S. 205, 214-215 (2013)). As the district court correctly held, the Defund Provision falls on the prohibited side of that divide, as it "does not merely 'withhold[] funding based on whether entities provide abortion services,' but also based on whether 'an entity, *including its affiliates*,' provides abortion services." Op.25. Given that statutory text, the government's self-contradicting claim that "Congress was not regulating the act of affiliation or the acts of the non-abortion-providing affiliates" rings hollow. Mot.19; *contra* Dkt.53 at 11; PI.Hearing.Tr.30:9-14. Because this associational restraint occurs "'outside the contours' of the Medicaid program," it is unconstitutional. Op.27 (quoting *AOSI*, 570 U.S. at 214-215). The Defund Provision imposes no "limit on the services that Medicaid funds may reimburse,"

but instead restricts who "a Medicaid provider may…affiliate with." Op.27. It thus unconstitutionally "place[s] a condition on the *recipient* of the subsidy rather than on the program or service" being provided. Op.28 (quoting *Rust v. Sullivan*, 500 U.S. 173, 197 (1991)).

The government mistakenly claims that First Amendment rights are not implicated by the "affiliates" provision because it merely aims to stop prohibited entities from shuffling funds between corporate sub-entities. Mot.2. But the "affiliates" provision here contains none of the limitations that would be expected if that were its purpose. Dkt.93 at 12. Indeed, the litany of supposedly "comparable" statutes cited by the government, Mot.15, contain careful limitations on the term "affiliates," unlike the Defund Provision. Mot.12-14. Moreover, "none of the statutes cited by [the government] impact First Amendment protected activity or circumstances in which the affiliation at issue is 'part and parcel with…associational expression.'" Mot.14. "That Congress has used the term 'affiliates' in contexts that do not implicate collective advocacy has no bearing on the First Amendment issue here." *Id.* In any event, the history and context of the Defund Provision demonstrate that its purpose was to target Planned Parenthood writ large. *Supra* p.4. "Innocent motives do not eliminate the danger" of a law that directly restrains First Amendment freedoms. *Reed v. Town of Gilbert*, 576 U.S. 155, 167 (2015); *see also NAACP v. Alabama*, 357 U.S. 449, 461-462 (1958).

Additionally, the government's view that the burden on Planned Parenthood's First Amendment rights should escape constitutional scrutiny simply because the regulation is not aimed at expression, Mot.17, misapplies the law. The incidental burden framework does nothing to undermine Planned Parenthood's argument, which is grounded on the unconstitutional conditions doctrine. Dkt.93 at 11-12. But even if the framework did apply, the district court rightly rejected the government's argument: "[W]hile Defendants focus on evasion of the law through new 'subsidiaries' or other entities under a prohibited entity's control, the [Defund] [P]rovision has no such limitation. Instead, it encompasses existing affiliates that do not provide abortion." *Id.* at 12. "The result," the district court concluded, "is a restriction on associational freedom that is in no way 'essential to the furtherance of [the government's] interest' in withholding funds from certain abortion providers." *Id.*

### 2. The Defund Provision unconstitutionally retaliates against Planned Parenthood's exercise of First Amendment rights

Congress cannot "punish or suppress disfavored expression," *National Rifle Ass'n v. Vullo*, 602 U.S. 175, 188 (2024), or retaliate against such expression, *Lozman v. City of Riviera Beach*, 585 U.S. 87, 90 (2018). Accordingly, "the government may not deprive an individual of a 'valuable government benefit[]' in retaliation for [the] exercise of First Amendment rights." *Barton v. Clancy*, 632 F.3d 9, 23 (1st Cir. 2011). Yet that is precisely what the Defund Provision seeks to do.

Because PPFA and its Members (1) "'engaged in constitutionally protected conduct,'" (2) were "'subjected to an adverse [government] action,'" and (3) "'the protected conduct was a substantial or motivating factor in the adverse action,'" they have demonstrated all elements necessary to prevail on a retaliation claim. *Gattineri v. Town of Lynnfield*, 58 F.4th 512, 514-515 (1st Cir. 2023).

*First*, PPFA and its Members engage in First Amendment-protected activity. They advocate for access to sexual and reproductive health care, including abortion. To speak and act together, Members associate with PPFA and one another, exercising the associational right "implicit in the right to engage in activities protected by the First Amendment." *Roberts*, 468 U.S. at 622.

*Second*, terminating Medicaid eligibility is an adverse action. The Defund Provision punishes Members for associating with each other and PPFA by stopping the flow of hundreds of millions of dollars in Medicaid reimbursements—denying a "'valuable government benefit.'" *Clancy*, 632 F.3d at 23. With that much at stake, disqualification would "'deter a reasonably hardy individual'" from associating with Planned Parenthood or advocating for sexual and reproductive health care, including abortion. *McCue v. Bradstreet*, 807 F.3d 334, 339 (1st Cir. 2015).

*Finally*, intentional animus against Planned Parenthood's message motivates the Defund Provision, and Planned Parenthood Members' association with each

other and PPFA is why they have been targeted for differential treatment. *Supra* pp.15-16.

## II. THE REMAINING FACTORS WEIGH HEAVILY AGAINST A STAY

### A. The Government Has Not Shown Irreparable Injury

The government has not carried its burden of showing it "will be irreparably injured absent a stay." *New York*, 133 F.4th at 65. The government emphasizes that Acts of Congress are entitled to a presumption of constitutionality, and that enjoining their enforcement irreparably injures the people Congress represents. Mot.20. But the government's bare assertion that "the district court erred in downplaying these harms," Mot.21, ignores that the "significant public interest in the implementation of duly enacted statutes" must give way "when social policy burdens the exercise of First Amendment rights." Op.53-54. Moreover, "'there is generally no public interest in the perpetuation of unlawful agency action.'" *Somerville Pub. Schs. v. McMahon*, 139 F.4th 63, 76 (1st Cir. 2025); *accord Legend Night Club v. Miller*, 637 F.3d 291, 302-303 (4th Cir. 2011); *Joelner v. Vill. of Wash. Park*, 378 F.3d 613, 620 (7th Cir. 2004); *Homans v. City of Albuquerque*, 264 F.3d 1240, 1244 (10th Cir. 2001); *Connection Distrib. Co. v. Reno*, 154 F.3d 281, 288 (6th Cir. 1998). Thus, as the district court correctly concluded, "[a]lthough Congress has significant latitude in allocating funds 'from a finite pool of resources,' Congress cannot pursue

fiscal objectives 'by discriminating against individuals or groups.'" Dkt.93 at 20-21.

Additionally, the government's "failure to seek expedited review of the stay motion" before this Court or the district court further "undercuts any claim that immediate relief from the injunction is required to prevent irreparable harm." Order, *Beckwith v. Frey*, No. 25-1160, Dkt.00118270772 (1st Cir. Apr. 10, 2025). The district court issued its first order enjoining the statute on July 21, but the government did not file a stay motion with this Court until about three weeks later, and even then did not seek expedited review. The government now claims its renewed motion must be decided by September 8 "so that the government will have sufficient time to seek relief from the Supreme Court, if necessary, before prohibited entities are identified on October 1," Mot.3, but it neither explains why that date creates sudden urgency, nor its failure to raise this claimed concern sooner and seek expedited review of its appeal from the outset. Indeed, this newfound demand is especially confounding since, by the Defund Provision's terms, its prohibition "begin[s] on the date of the enactment of this Act," not October 1. Pub. L. No. 119-21, § 71113(a).

## B.    A Stay Would Irreparably Harm Planned Parenthood

By contrast, Planned Parenthood will suffer irreparable harm if the preliminary injunction is even temporarily lifted. The "loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable

injury." *Mahmoud v. Taylor*, 145 S.Ct. 2332, 2364 (2025). Given the likely First Amendment violations, "[t]here is no need for an extensive analysis" to identify an injury to Planned Parenthood. *Fortuño*, 699 F.3d at 15.

Additional harms to Planned Parenthood are apparent. Disqualifying Planned Parenthood from Medicaid would force its health centers to cancel appointments with patients, cut back on services, lay off staff, and perhaps close. *See* Dkt.5-1 ¶¶4, 44, 54-57, 78; Dkt.5-2 ¶¶40-42; Dkt.5-3 ¶¶6, 24; Dkt.5-4 ¶¶45-48. These cancellations and cuts would harm Planned Parenthood Members' and PPFA's shared "mission of ensuring access to sexual and reproductive health care services" to people no matter their means. Dkt.5-1 ¶1; *see League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 9 (D.C. Cir. 2016) (irreparable harm where "new obstacles unquestionably make it more difficult for the [plaintiffs] to accomplish their primary mission"). They would also impair the provider-patient relationship and undermine Planned Parenthood health centers' goodwill and reputation. *See Ross-Simons of Warwick, Inc. v. Baccarat, Inc.*, 217 F.3d 8, 13 (1st Cir. 2000).

## C.    A Stay Would Disserve The Public Interest

The preliminary injunction serves the public interest, and staying it would not. *See* Op.53-55. If enforceable, the Defund Provision would compel Members to curtail care for patients, cut services, and close health centers, jeopardizing the health of all Planned Parenthood patients. *See* Dkt.5-5 ¶¶35, 57, 60-63, 82; Dkt.5-1 ¶¶65-

73. The resulting public health crisis would harm the public interest. *See Rio Grande Cmty. Health Ctr., Inc. v. Rullan*, 397 F.3d 56, 77 (1st Cir. 2005) (affirming preliminary injunction where "any shut down" of health center "would adversely affect hundreds of Medicaid patients").

By comparison, there is no public interest in enforcing the Defund Provision. The government leans almost entirely on a supposed interest in ensuring "that taxpayer dollars should not be allocated to certain organizations that perform elective abortions." Mot.21. But the key word is "certain"—the Defund Provision plainly does not bar taxpayer dollars from going to organizations that perform elective abortions. *See* Mot.12 (stating that Members could avoid Section 71113 yet continue to provide abortions if they "relinquish Section 501(c)(3) or essential-community-provider status"). It bars funding to Planned Parenthood Members, which is what it was designed to do—and the government has never explained what legitimate public interest that serves. While the government fleetingly invokes the public's interest in the implementation of duly enacted statutes, Mot.21, there is no public interest in perpetuating unconstitutional action. *See Somerville*, 139 F.4th at 76.

## CONCLUSION

Since every factor disfavors a stay, this Court should deny the Motion. However, if the Court grants the Motion, it should clarify that Planned Members are

entitled to retain reimbursements for covered healthcare already provided and for which, in reliance on the injunction, they submitted claims while the injunction was in place.

Respectfully submitted,

Emily Nestler
PLANNED PARENTHOOD
 FEDERATION OF AMERICA, INC.
1110 Vermont Avenue, NW
Washington, D.C. 20005
Tel.: (202) 973-4800
emily.nestler@ppfa.org

C. Peyton Humphreville
Kyla Eastling
PLANNED PARENTHOOD
 FEDERATION OF AMERICA, INC.
123 William Street
New York, NY 10038
Tel.: (212) 441-4363
peyton.humphreville@ppfa.org
kyla.eastling@ppfa.org

/s/ Alan Schoenfeld
Alan Schoenfeld
Cassandra A. Mitchell
Alex W. Miller
WILMER CUTLER PICKERING
 HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Tel.: (212) 937-7294
alan.schoenfeld@wilmerhale.com
cassie.mitchell@wilmerhale.com
alex.miller@wilmerhale.com

Albinas Prizgintas
WILMER CUTLER PICKERING
 HALE AND DORR LLP
2100 Pennsylvania Ave NW
Washington, DC 20037
Tel.: (202) 663-6700
albinas.prizgintas@wilmerhale.com

Sharon K. Hogue
WILMER CUTLER PICKERING
 HALE AND DORR LLP
60 State Street
Boston, MA 02109
Tel.: (617) 526-6000
Fax: (617) 526-5000
sharon.hogue@wilmerhale.com

September 3, 2025

*Attorneys for Plaintiffs-Appellees*

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(g), the undersigned hereby certifies that this brief complies with the type-volume limitation of Fed. R. App. P. 27(d)(2).

1.     Exclusive of the exempted portions of the brief, as provided in Fed. R. App. P. 32(f), the brief contains 5,191 words.

2.     The brief has been prepared in proportionally spaced typeface using Microsoft Word for Microsoft 365 MSO in 14-point Times New Roman font. As permitted by Fed. R. App. P. 32(g), the undersigned has relied upon the word count feature of this word processing system in preparing this certificate.

*/s/ Alan Schoenfeld*
Alan Schoenfeld
WILMER CUTLER PICKERING
  HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Tel.: (212) 937-7294
alan.schoenfeld@wilmerhale.com

September 3, 2025

# CERTIFICATE OF SERVICE

I hereby certify that I filed the foregoing Opposition to Motion for Stay on Appeal with the Clerk of the United States Court of Appeals for the First Circuit via the CM/ECF system this 3rd day of September, 2025 to be served on the following counsel of record via ECF:

ABRAHAM R. GEORGE
    abraham.george@usdoj.gov
DONALD CAMPBELL LOCKHART
    donald.lockhart2@usdoj.gov
U.S. ATTORNEY'S OFFICE
1 Courthouse Way
Boston, MA 02210
(617) 748-9152

BRETT A. SHUMATE
    brett.a.shumate@usdoj.gov
LEAH B. FOLEY
    leah.b.foley@usdoj.gov
ERIC D. MCARTHUR
    eric.d.mcarthur@usdoj.gov
EMILY HALL
    emily.hall@usdoj.gov
STEVEN H. HAZEL
    steven.h.hazel@usdoj.gov
BRADLEY HUMPHREYS
    bradley.humphreys@usdoj.gov
JACOB SILER
    jacob.s.siler@usdoj.gov
DANIEL TENNY
    daniel.tenny@usdoj.gov
ELIZABETH THEMINS HEDGES
    elizabeth.t.hedges@usdoj.gov
U.S. DEP'T OF JUSTICE
950 Pennsylvania Ave NW
Washington, DC 20530-0001

(202) 514-2498

E<small>LISABETH</small> N<small>EYLAN</small>
  elisabeth.j.neylan@usdoj.gov
U.S. D<small>EP'T OF</small> J<small>USTICE</small>
1100 L St NW
Washington, DC 20530
(717) 217-8180

*Attorneys for Defendants-Appellants*

T<small>HOMAS</small> M<small>ICHAEL</small> H<small>ARVEY</small>
  thomasharvey2232@embarqmail.com
L<small>AW</small> O<small>FFICE OF</small> T<small>HOMAS</small> M. H<small>ARVEY</small>
22 Mill St
Arlington, MA 02476
(252) 539-2111

N<small>ATHAN</small> J<small>EREMIAH</small> M<small>OELKER</small>
  nmoelker@aclj.org
J<small>ORDAN</small> A. S<small>EKULOW</small>
  jordansekulow@aclj.org
A<small>MERICAN</small> C<small>ENTER FOR</small> L<small>AW</small> & J<small>USTICE</small>
201 Maryland Ave NE
Washington, DC 20002-5703
(202) 546-8890

O<small>LIVIA</small> F. S<small>UMMERS</small>
  osummers@aclj.org
A<small>MERICAN</small> C<small>ENTER FOR</small> L<small>AW</small> & J<small>USTICE</small>
1000 Regent University Dr
Virginia Beach, VA 23464
(757) 955-8176

*Attorneys for American Center for Law and Justice*

                              */s/ Alan Schoenfeld*
                              Alan Schoenfeld
                              W<small>ILMER</small> C<small>UTLER</small> P<small>ICKERING</small>
                                H<small>ALE AND</small> D<small>ORR LLP</small>

7 World Trade Center
250 Greenwich Street
New York, NY 10007
Tel.: (212) 937-7294
alan.schoenfeld@wilmerhale.com


September 3, 2025