Nos. 25-1698, 25-1755

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIRST CIRCUIT

PLANNED PARENTHOOD FEDERATION OF AMERICA, INC.; PLANNED PARENTHOOD LEAGUE OF MASSACHUSETTS; PLANNED PARENTHOOD ASSOCIATION OF UTAH,

*Plaintiffs-Appellees*,

v.

ROBERT F. KENNEDY, JR., in the official capacity as Secretary of the U.S. Department of Health and Human Services; UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES; MEHMET OZ, in the official capacity as Administrator of the Centers for Medicare & Medicaid Services; and CENTERS FOR MEDICARE AND MEDICAID SERVICES,

*Defendants-Appellants.*

On Appeal from the United States District Court
for the District of Massachusetts

**REPLY IN SUPPORT OF MOTION FOR STAY PENDING APPEAL**

BRETT A. SHUMATE
  *Assistant Attorney General*
LEAH B. FOLEY
  *United States Attorney*
ERIC D. MCARTHUR
  *Deputy Assistant Attorney General*
DANIEL TENNY
STEVEN H. HAZEL
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7217*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 514-2498*
  *Steven.H.Hazel@usdoj.gov*

## TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................... 1

ARGUMENT .......................................................................................................... 1

    I.    The Government is Overwhelmingly Likely to Succeed on the Merits ........................................................................................................ 1

    II.   The Remaining Factors Favor a Stay ............................................... 9

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# INTRODUCTION

Plaintiffs' response confirms that there is no persuasive basis for the district court's orders barring the government from enforcing an Act of Congress that limits Medicaid spending. On the merits, plaintiffs largely rehash the district court's flawed orders without engaging with the government's arguments. Plaintiffs insist that Congress enacted the Medicaid funding restriction to punish them for their expressive advocacy, yet their own complaint describes their members as, collectively, "the only nationwide abortion provider," which explains the legitimate reason why the statute applies largely but not exclusively to them. Compl. ¶ 10. Plaintiffs' claim regarding congressional intent relies chiefly on the post-enactment statement of an Executive Branch employee that did not purport to address Congress's motives. On the equities, plaintiffs disregard the Supreme Court's repeated statements that a stay is warranted in virtually every case in which a court enjoins enforcement of an Act of Congress. This Court should stay the injunctions pending appeal.

# ARGUMENT

## I. The Government Is Overwhelmingly Likely to Succeed on the Merits

**A.** Plaintiffs' lead argument is that the Medicaid funding restriction satisfies the Supreme Court's stringent test for applying the Bill of Attainder Clause. Plaintiffs do not dispute that on its face, the statute does not single them out for punishment based on their past conduct but instead imposes a prospective restriction on the receipt of

Medicaid funds by certain abortion providers. Nor do plaintiffs dispute that such a restriction would not constitute a bill of attainder.

Instead, plaintiffs claim that, despite its text, Section 71113 is actually an effort to "punish[]" them for "advocat[ing] for sexual and reproductive rights." Resp. 8. But their filings in this case illustrate the absence of any evidence supporting that claim—much less evidence strong enough to overcome the statute's text—and in fact reinforce Congress's legitimate purposes.

Plaintiffs emphasize that Planned Parenthood members serve "millions of people," Resp. 3, and that "collectively" they are "the only nationwide abortion provider," Compl. ¶ 10. It is natural that in seeking to halt taxpayer funding for abortion providers, Congress would adopt a limitation that applies to "the only nationwide abortion provider," *id.*, in addition to—as plaintiffs concede, Resp. 9—a few other entities with similar characteristics. That looks nothing like a bill of attainder, and everything like a restriction on the allocation of federal funds for entities engaged in conduct Congress disapproved. By contrast, plaintiffs are not the only nationwide abortion advocate, and like all other such advocates, they can continue to participate in Medicaid so long as they stop performing abortions.

Plaintiffs repeat (Resp. 11-12) the district court's suggestion that because federal law bars federal funding of abortion, Section 71113 serves no non-punitive purpose. But as we previously explained, "[m]oney is fungible," and Congress was entitled to conclude that it does not want to contribute to abortion indirectly by

allowing entities to allocate federal funds for other expenditures and use the savings to fund abortions. *Holder v. Humanitarian L. Project*, 561 U.S. 1, 31 (2010). And more generally, Congress was entitled to conclude that it does not wish to support abortion providers. *See Rust v. Sullivan*, 500 U.S. 173, 192-93 (1991) ("[T]he government may 'make a value judgment favoring childbirth over abortion, and . . . implement that judgment by the allocation of public funds[.]'").

Plaintiffs likewise struggle to explain why halting Medicaid funding to certain entities resembles the severe punishments understood as implicating the Bill of Attainder Clause. Like the district court, plaintiffs equate Section 71113 with historical laws "barring designated . . . groups from participation in specified employments." Resp. 10 (citation omitted). That argument fails on many levels: serving Medicaid patients is not a profession, plaintiffs remain free to provide healthcare to anyone they choose, and they can even use federal funds to do so if they cease performing abortions. The only circuit to have confronted a bill-of-attainder claim in remotely similar circumstances rejected it, in a case that plaintiffs ignore. *See* Mot. 8 (discussing *ACORN v. United States*, 618 F.3d 125, 137 (2d Cir. 2010)).

Plaintiffs' claims are also meritless for the independent reason that the statute refrains from designating "identifiable individual[s]" for punishment. *Nixon v. Administrator of Gen. Servs.*, 433 U.S. 425, 468 (1977). Plaintiffs demonstrate as much by quoting the district court's statement that Congress "defin[ed] the class subject to the regulation based on immutable facts," Resp. 9 (citation omitted), without

3

explaining how choosing to provide abortions several months after the Act's passage could plausibly be described as an immutable characteristic. Plaintiffs also miss the point in contending that even laws leaving "the *designated* parties a way of escaping the penalty" may qualify as bills of attainder. Resp. 9-10 (quoting *United States v. Brown*, 381 U.S. 437, 442 (1965) (emphasis added)). As the Supreme Court has explained—in a case plaintiffs also fail to mention—a law such as Section 71113 that neither names particular individuals nor "attach[es] to the[ir] past and ineradicable actions" does not operate as a designation of persons. *Communist Party of the U.S. v. Subversive Activities Control Bd.*, 367 U.S. 1, 87-88 (1961). The only past action relevant to the application of Section 71113 is the receipt of a specified amount of Medicaid funds in 2023, and plaintiffs cannot seriously suggest that Congress intended to punish anyone for that.

The lack of support for plaintiffs' argument is apparent in their assertion (Resp. 1) that Section 71113 was "concededly crafted to punish Planned Parenthood for its political advocacy." "[O]nly the clearest proof" could justify such a claim. *Flemming v. Nestor*, 363 U.S. 603, 617 (1960). Yet plaintiffs rely (Resp. 1, 11) on a Department of Health and Human Services employee's statement, made in response to the district court's first order, that "States should not be forced to fund organizations that have chosen political advocacy over patient care." Resp. 1 (citation omitted). An Executive Branch employee's statement that did not purport to address legislative intent and that was made after Section 71113's enactment is irrelevant to discerning

4

Congress's motivation, and does not remotely "concede" anything about that motivation.

**B.** Plaintiffs' theory that Section 71113's reference to an entity's "affiliates" transforms the entire provision into an intrusion on First Amendment association confuses a regulation of corporate affiliates with a restriction on expressive association and would not in any event justify the expansive relief entered by the district court.

Plaintiffs do not contest the central elements of the government's argument. They do not dispute that Section 71113's text reflects that the affiliate provision refers to corporate affiliates and subsidiaries, not associates engaged in joint expression. Nor do plaintiffs dispute that Congress often employs similar provisions to prevent regulated entities from using the corporate form to evade statutory requirements. And plaintiffs do not contend that such provisions have ever been understood as raising First Amendment concerns.

Instead, plaintiffs rehash the district court's mistaken analysis. They claim, for instance, that there is no "evident link between such affiliation and 'subsidizing abortion.'" Resp. 14. In the absence of the affiliate provision, however, a prohibited entity could create affiliates and use them to obtain Medicaid funds, frustrating Congress's objective of withholding taxpayer dollars from certain large abortion providers. And affiliated entities often have interconnected finances, exacerbating

5

Congress's concern regarding subsidizing abortion. That is why Congress frequently extends statutory requirements to regulated entities' affiliates. *See* Mot. 14-15.

Plaintiffs also repeat the district court's error of conflating a regulation of corporate affiliates with a restriction on expression. Plaintiffs emphasize that "Planned Parenthood Federation advocates before Congress," "communicates with the public," "supports campaigns," and "supports candidates for [elected office]." Resp. 13. Missing from plaintiffs' response, however, is any explanation of why those activities matter to Section 71113. The operation of that Section's affiliate provision does not turn on whether entities engage in advocacy, joint or otherwise.

In attempting to distinguish (Resp. 17) Section 71113 from the "litany" of federal statutes referring to corporate affiliates, plaintiffs only underscore the Section's similarity to those statutes. Plaintiffs claim that other statutes "limit[]" the term affiliates, Resp. 17, but the only limit they or the district court identify is that some statutes expressly state that affiliates must be "related to the regulated entities via control," Dkt. No. 93, at 13. That does not differentiate Section 71113, as the term affiliate inherently entails such control. *See* Mot. 14 (discussing the dictionary definition of an affiliate). Plaintiffs also claim (Resp. 17) that Section 71113 differs from other statutes because Planned Parenthood affiliates sometimes engage in joint expression. Under that theory, the numerous state and federal laws referring to

6

corporate affiliates would presumably be subject to as-applied First Amendment challenges whenever regulated entities happen to engage in expressive activity.

As the Supreme Court has explained, however, laws that incidentally burden expression raise no First Amendment concern where the government regulates for reasons unrelated to expression. *See Arcara v. Cloud Books, Inc.*, 478 U.S. 697, 707 (1986). Plaintiffs attempt to sidestep that principle by noting that their First Amendment claim "is grounded on the unconstitutional conditions doctrine." Resp. 18. But the unconstitutional-conditions claim would need to rest on a condition that implicates the First Amendment, and under *Arcara* the condition here does not.

It was similarly mistaken for the district court to suggest (and plaintiffs to reiterate) that Section 71113 implicates the test outlined in *United States v. O'Brien*, 391 U.S. 367 (1968). Resp. 18 (citing Dkt. 93, at 12).[1] That test has no application here, where the regulated conduct involves "no element of protected expression." *Arcara*, 478 U.S. at 705. Equally unavailing is plaintiffs' claim that "[i]nnocent motives" are irrelevant to First Amendment analysis. Resp. 17 (citation omitted). The case plaintiffs cite actually states that "innocent motives do not eliminate the danger of censorship presented by a facially content-based statute." *Reed v. Town of Gilbert*, 576

---

[1] Plaintiffs properly do not adopt the district court's suggestion (Dkt. No. 93, at 10) that the government forfeited reliance on the incidental-burden principle. The government preserved that argument. *See* Dkt. No. 53, at 34-35.

7

U.S. 155, 167 (2015).  That proposition has no relevance here, where Section 71113 applies without regard to expression—much less content.

At a minimum, plaintiffs' arguments regarding the affiliate provision do not support the district court's second injunction, which sweeps far beyond the small number of Planned Parenthood members that may qualify only as affiliates.  Plaintiffs' only response (Resp. 15-16) is to invoke the government's statement that an entity can "remove itself from the provision's scope . . . by ceasing to provide for abortions and disaffiliating with entities that do." Dkt. No. 53, at 11.  That is true if there is no injunction at all, but it does not suggest that a narrow injunction is insufficient.  If Section 71113 were enjoined as to members that do not provide abortions, they could maintain their relationships with the other, abortion-providing members, and those other members could easily escape the funding prohibition by ceasing to provide abortions.  Affiliation would become irrelevant.

In addition to relying on a flawed First Amendment theory, plaintiffs' equal-protection and unconstitutional-conditions arguments reflect other errors.  As to the equal-protection claim, plaintiffs cursorily assert that Section 71113 "fails even rational basis review," Resp. 14, but they make no attempt to apply the highly deferential standard governing such claims, *see González-Droz v. González-Colón*, 660 F.3d 1, 9 (1st Cir. 2011).  As to the unconstitutional-conditions claim, plaintiffs characterize Section 71113 as placing "a condition on the recipient of the subsidy rather than on the [federal] program." Resp. 17 (quoting *Rust*, 500 U.S. at 197).  But

8

as we previously explained, Congress was making funding decisions—which are indisputably within the challenged program—based on a complete understanding of how federal funds might directly or indirectly contribute to abortions given the fungibility of money.

**C.** Plaintiffs cannot sustain the injunctions based on a First Amendment retaliation claim that the district court did not adopt. *See* July 28 Order 49 (declining to reach this claim). To support this claim, plaintiffs would need to demonstrate that Congress enacted Section 71113 in retaliation for Planned Parenthood's expressive advocacy. But a general "principle of constitutional law" bars courts from "strik[ing] down an otherwise constitutional statute on the basis of an alleged illicit legislative motive." *United States v. O'Brien*, 391 U.S. 367, 383 (1968). Regardless, plaintiffs come nowhere near demonstrating that "intentional animus against Planned Parenthood's message" motivated Congress to enact Section 71113. Resp. 19-20. As discussed, Section 71113 applies without regard to expression, and plaintiffs fail to show that animus motivated even a single legislator, much less a 535-member legislative body. *See supra* pp. 2-5.

## II.     The Remaining Factors Favor a Stay

**A.** Plaintiffs ignore (*see* Resp. 20-21) the numerous Supreme Court opinions recognizing that a stay should be a matter of course when a court enjoins the enforcement of an Act of Congress. *See* Mot. 19-21 (citing cases). Plaintiffs thus provide no explanation whatsoever for why this case should be the exception to the

9

rule that in "virtually all" cases where a lower court has held a federal statute unconstitutional, an appellate court should "grant[] a stay if requested . . . by the Government." *Bowen v. Kendrick*, 483 U.S. 1304, 1304 (1987) (Rehnquist, C.J., in chambers). The absence of support for plaintiffs' position is highlighted by their reliance on cases stating that "there is generally no public interest in the perpetuation of unlawful agency action." Resp. 20 (citations omitted). Those cases have no relevance to injunctions barring enforcement of an Act of Congress.

At the same time that plaintiffs disregard the government's injuries, they substantially overstate their own asserted harms. Plaintiffs' meritless First Amendment claims provide no basis for irreparable harm. And although plaintiffs contend (Resp. 22) that a stay may prompt them to "cut back on services, lay off staff, and perhaps close," they have no cognizable interest in obtaining federal funds to which they are not legally entitled. Regardless, plaintiffs nowhere explain why they could not continue to provide services using funding sources other than taxpayer dollars.

Plaintiffs likewise err in asserting (Resp. 21) that the government's "failure to seek expedited review of the stay motion . . . undercuts any claim" to irreparable harm. To ensure that this Court (and if necessary, the Supreme Court) can consider the stay application before October 1, the government has repeatedly sought expedited relief, including most recently in its renewed stay motion requesting a decision from this Court by Monday, September 8. Plaintiffs profess to be

10

"confound[ed]" by the government's focus on the October 1 date, Resp. 21, but that is the first date on which prohibited entities can begin to be identified, and thus the first date on which the district court's injunctions constrain the government's action. *See* 139 Stat. at 300.

**B.** Similarly improper is plaintiffs' request (Resp. 23-24) that if the Court enters a stay, "it should clarify that [plaintiffs] are entitled to reimbursements" submitted "while the injunction was in place." As the Supreme Court recently recognized, there is no basis to continue prospectively enforcing an improperly entered injunction once it has been stayed. *See Dep't of Homeland Sec. v. D.V.D.*, 145 S. Ct. 2627, 2629 (2025).

Regardless, the issue before this Court is whether the district court's injunctions should be stayed, not the disposition of a hypothetical billing dispute that might arise in the future. If a concrete dispute regarding a particular reimbursement request arises, the parties can litigate that dispute in the normal course, beginning with adversary briefing in the district court, based on concrete facts, a concrete agency decision, and the exhaustion of any applicable administrative remedies.

## CONCLUSION

The Court should stay the injunctions pending appeal.

Respectfully submitted,

BRETT A. SHUMATE
  *Assistant Attorney General*
LEAH B. FOLEY
  *United States Attorney*

ERIC D. MCARTHUR
  *Deputy Assistant Attorney General*

DANIEL TENNY

*/s/ Steven H. Hazel*
STEVEN H. HAZEL
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7217*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 514-2498*
  *Steven.H.Hazel@usdoj.gov*

September 2025

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing motion complies with the word limit of Federal Rule of Appellate Procedure 27(d)(2)(C) because the motion contains 2,600 words. The motion complies with the typeface and type-style requirements of Federal Rules of Appellate Procedure 27(d)(1)(E) and 32(a)(5)-(6) because it has been prepared using Microsoft Word 2016 in proportionally spaced 14-point Garamond typeface.

                                                                    */s/ Steven H. Hazel*
                                                                    STEVEN H. HAZEL

## CERTIFICATE OF SERVICE

      I hereby certify that on September 5, 2025, I electronically filed the foregoing motion with the Clerk of the Court for the United States Court of Appeals for the First Circuit by using the appellate CM/ECF system. Participants in the case are registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system.

                                                                                         /s/ *Steven H. Hazel*
                                                                                     STEVEN H. HAZEL